# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| ETHEL ELSIE GROSE, ETC., ET AL., | )<br>)<br>) |
| Plaintiffs, | ) Case No. 1:07CV00062<br>) |
| v. | ) **OPINION**<br>) |
| SUN LIFE ASSURANCE COMPANY OF CANADA, | ) By: James P. Jones<br>) Chief United States District Judge<br>) |
| Defendant. | ) |

*Roger W. Mullins, Roger W. Mullins, PLLC, Tazewell, Virginia, for Plaintiffs; Alexander T. Marshall and David E. Constine, III, Troutman Sanders LLP, Richmond, Virginia, for Defendant.*

The issue presented in this ERISA case is whether the claims fiduciary abused its discretion in denying the plaintiffs benefits under a group accidental death and dismemberment policy. Based on the administrative record, I find that the claims fiduciary did not abuse its discretion and grant the defendant's motion for summary judgment.

I

Billy Ray Grose[1] was employed by Vane Brothers Company as a deck hand. Through his employer, he had both a life insurance policy and an accidental death and dismemberment ("AD&D") policy. Sun Life Assurance Company of Canada ("Sun Life") is the claims fiduciary for both policies. Initially, Billy Ray named his wife as the primary beneficiary, but later he executed a form naming his parents, the plaintiffs Ethel Elsie Grose, also known as Elsie Farmer Grose, and Eddie H. Grose, as the primary beneficiaries.[2]

On August 27, 2005, at approximately 11:30 P.M., Billy Ray crashed the motorcycle he was driving. He was subsequently transferred to a hospital where he died the next morning at 6:39 A.M. His death certificate lists his causes of death as hemorrhagic shock, thoracic aorta transection, and motorcycle crash. It was noted that he smelled of alcohol. A toxicology report, resulting from blood drawn at 11:16 A.M. on August 28, 2005, disclosed a blood alcohol concentration of .123 percent.

---

[1] Because Billy Ray Grose and the plaintiffs have the same last name, I will refer to Billy Ray Grose as "Billy Ray" or "the decedent." I will refer to the plaintiffs as "the plaintiffs," "the claimants," or "the beneficiaries."

[2] In a related case, the decedent's wife disputed the change in beneficiaries. She did not prevail in that action and the decedent's parents were awarded the proceeds of the life insurance policy. *See Sun Life Assurance Co. of Canada v. Grose*, No. 1:06CV00078, 2007 WL 419518 at *1 (W.D. Va. Feb. 6, 2007).

In accord with the policy requirements, a copy of the death certificate was submitted to Sun Life. Sun Life requested additional information, including any accident reports or toxicology reports. The plaintiffs experienced some difficulty obtaining the toxicology report because they were not the next of kin. Eventually, however, Sun Life received the toxicology report.

Sun Life sent a letter to the plaintiffs denying their claim for benefits under the AD&D policy. Sun Life explained that "injuries resulting in Billy Ray's death were reasonably foreseeable and were the natural and probable result of conduct knowingly undertaken and therefore, were not due to accidental means." (R. at 274.) Sun Life notified the plaintiffs of their right to request a review of the denial.

Sun Life also sent a letter to the plaintiffs' counsel and explained in greater detail its reasons for denying coverage. Sun Life reiterated that Billy Ray's death was not an accident because he was highly intoxicated at the time of the motorcycle crash. The dangers of drinking and driving, Sun Life explained, were well-known, and a vehicle crash was a natural and probable consequence of driving drunk. Sun Life also concluded that denial was appropriate based on the intentionally self-inflicted injuries exclusion. Billy Ray voluntarily consumed alcohol to the point of intoxication and then intentionally drove his motorcycle. Serious bodily injury or death was a reasonably foreseeable consequence of his behavior, therefore Billy Ray either knew

or should have known that his actions could cause serious bodily injury or his own death.

The plaintiffs requested review and reconsideration of Sun Life's denial of benefits. In that letter, the plaintiffs argued that a presumption of accidental death would apply at trial and that the evidence regarding Billy Ray's intoxication would not be admissible. After reviewing the claim and considering the plaintiffs' arguments, Sun Life again denied coverage. In its letter, Sun Life advised the plaintiffs of their right to file suit under Title I of the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001-1144 (West 1999 & Supp. 2008) ("ERISA").

Thereafter the plaintiffs filed the present action in this court, challenging Sun Life's denial of coverage. They assert jurisdiction based on ERISA, 29 U.S.C.A. § 1132. Sun Life answered and filed the administrative record of its decision to deny benefits. The parties have filed cross motions for summary judgment, and the case is ripe for decision.

II

The default standard of review under ERISA is de novo. An abuse of discretion standard of review "is appropriate only when discretion is vested in the

plan administrator."³ *Woods v. Prudential Ins. Co. Of Am.*, 528 F.3d 320, 322 (4th Cir. 2008); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 115 (1989). The parties concede that an abuse of discretion standard is appropriate in this case.

Under this deferential standard, Sun Life's "decision will not be disturbed if it is reasonable, even if this court would have come to a different conclusion independently." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997). Such a decision is reasonable if it "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997) (internal quotations omitted). Substantial evidence "is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

---

³ Sun Life characterizes itself as the "claims fiduciary." (Def.'s Br. Mot. Summ. J. 3.) The policy states, "The Plan Administrator has delegated to Sun Life its entire discretionary authority to make all determinations regarding claims for benefits under the benefit plan insured by this Policy." (R. at 68.) There appear to be no practical differences between a plan administrator and a claims fiduciary for purposes of this analysis. Neither party has asserted that anything other than the abuse of discretion standard is appropriate.

The sole issue before this court is whether Sun Life's decision to deny benefits under the AD&D policy was reasonable. The plaintiffs argue that the denial was unreasonable because Sun Life "erroneously and unreasonably determined" that Billy Ray "died as a result of 'intentionally self-inflicted injuries' rather than accidental injuries sustained from the automobile collision" and Sun Life "failed to afford Plaintiffs a fair and searching review of the evidence in its administrative denial of the claim for benefits under the terms of the policy." (Pls.' Brief Mot. Summ. J. 3.) Sun Life maintains that its decision to deny benefits was reasonable and the product of a full and fair review of the plaintiffs' claim.

I find that Sun Life's decision to deny the plaintiffs' claim was supported by substantial evidence and was the product of a deliberate and principled reasoning process.

III

On August 28, 2005, at 11:16 a.m., Billy Ray's blood alcohol content was .123. This was one and a half times the presumptive legal limit in South Carolina, where Billy Ray crashed his motorcycle. *See* S.C. Code Ann. §§ 56-5-2930, 56-5-2950(b)(3) (2007). Five hours had lapsed since his death, at which time his body smelled of alcohol. It had been twelve hours since his motorcycle crash. These facts

are gleaned from the Certificate of Death and the Toxicology Report. Although it is unknown what Billy Ray's blood alcohol concentration was at the time of his motorcycle crash, it is highly probable that it met or exceeded his blood alcohol level at least twelve hours after his last drink. *See Davis v. Commonwealth*, 381 S.E.2d 11, 14 (Va. Ct. App. 1989) (noting that it is common knowledge that blood alcohol concentration is a function of length of time between drinking and measurement).

The plaintiffs contend that there is no evidence—much less substantial evidence—that Billy Ray was intoxicated at the time of his motorcycle crash and that it was unreasonable to infer intoxication based on his blood alcohol level twelve hours later.[4] I understand their argument to imply that Billy Ray became intoxicated by unknown means sometime after his motorcycle crash, presumably while in the ambulance, in the hospital, or in the morgue. In support of these fantastical, though not impossible, scenarios, the plaintiffs have offered nothing. Support, if it existed, could be found in evidence about Billy Ray's actions prior to his motorcycle crash, hospital records or ambulance reports, or expert opinion that the body metabolizes alcohol differently after a traumatic event or post-mortem. *See Lemond v.*

---

[4] "None the less, there is no 'substantial evidence' that Billy Ray had a blood alcohol level above the legal limit at 11: 25 P.M. on the evening he was in the collision. No one knows when he consumed the alcohol that resulted in the level of alcohol in his blood at 11:25 A.M. the next morning, almost twelve hours after the collision." (Pls.' Br. Supp. Mot. Summ. J. 5.)

*Commonwealth*, 454 S.E.2d 31, 33 (Va. Ct. App. 1995) (describing expert opinion offered in drunk driving prosecution). It is impossible to say whether any such information would bolster plaintiffs' arguments. It is certain, however, that bald speculation without evidentiary support is plainly insufficient.

Having found that Sun Life's conclusion that Billy Ray died as a result of injuries sustained in a drunk driving accident was reasonable and supported by substantial evidence, I next consider the plaintiffs' argument that Billy Ray's death was, nevertheless, the result of an accident. Sun Life contends that a motor vehicle accident caused, at least partially, by the insured's intoxication is not an "accident" within the terms of the AD&D policy.

"When interpreting the benefits provisions of ERISA regulated insurance plans, courts are guided by federal substantive law. The language of the plan itself, of course, is paramount to this endeavor." *Baker v. Provident Life & Accident Ins. Co.*, 171 F.3d 939, 942 (4th Cir. 1999) (internal citations omitted).

Billy Ray's AD&D plan defines an "accident" as an "[a]ccidental [b]odily [i]njury while insured, which results in loss of life . . . within 365 days of the date of that injury." (R. at 36.) An "accidental bodily injury" is "bodily harm caused by an accident which is sustained directly and independently of all other causes." (R. at

- 8 -

15.) The plan excludes any loss which results from "intentionally self-inflicted injuries." (R. at 37.)

Sun Life reasons that Billy Ray intentionally became intoxicated and intentionally drove his motorcycle while intoxicated. The dangers inherent in drunk driving are well-known and Billy Ray knew or should have known that operating his motorcycle while intoxicated could result in serious bodily injury or even death. Consequently, Billy Ray's death was not the result of an accident within the meaning of the AD&D policy. Sun Life cites numerous cases to support its analysis. *See, e.g.*, *Arnold v. Hartford Life Ins. Co.*, 542 F. Supp. 2d 471, 481 (W.D. Va. 2008) ("Under the facts of this case, [the decedent's] death was reasonably foreseeable given that his alcohol consumption placed him well above the legal limit at the time of the crash that ultimately led to his death. As a result, and in the absence of any other reasonable explanation for the crash, it was reasonable for [the insurer] to determine that [the decedent's] death was not an 'accident' as that term is used in the relevant AD&D Policy.").

The plaintiffs acknowledge "that federal courts have universally considered that injuries incurred while driving under the influence are not 'accidents' in the context of ERISA claims" (Pls.' Reply Br. Supp. Mot. Summ. J. 4.), but argue that Sun Life lacked sufficient evidence from which to conclude that Billy Ray was

- 9 -

Case 1:07-cv-00062-JPJ-PMS   Document 16   Filed 07/24/08   Page 9 of 15   Pageid#: 479

voluntarily intoxicated at the time of the crash, and therefore the precedents are not controlling.

The plaintiffs have not pointed to any evidence supporting their theory of involuntary intoxication. Given this dearth of supporting fact or law, it would be unreasonable to conclude anything other than voluntary intoxication and voluntary operation of a motor vehicle. *See Begay v. United States*, 128 S. Ct. 1581, 1594-95 (2008) (Alito, J., dissenting) ("I have no doubt that the overwhelming majority of DUI defendants purposefully drank before getting behind the wheel and were purposefully operating their vehicles at the time of apprehension.").

The evidence indicates that Billy Ray, after becoming voluntarily intoxicated, voluntarily drove his motorcycle on the highway. As a result, he was involved in a one-vehicle crash and died. The dangers of drunk driving are pellucid and any reasonable person knows or should know that drunk driving can result in serious bodily injury and death. And, when such death occurs, as it did here, it is not an accident within the meaning of ERISA.

Finally, the plaintiffs argue that Sun Life failed to fully and fairly consider their claim.

The procedures for notifying and proving a claim are set forth in the policy. For death claims, Sun Life requests notice within thirty days of death. After receiving

notice, Sun Life sends forms for proof of claim within fifteen days. Proof of claim forms are to be returned to Sun Life within ninety days of death. If a beneficiary has difficulty submitting either notice or proof within the proper time period, Sun Life asks to be notified as soon as reasonably possible. Proof of claim "must consist of a description of the loss or disability; the date the loss or disability occurred; and the cause of the loss or disability." (R. at 68.) Proof of claim may also include, inter alia, "accident reports, autopsy reports, laboratory results, toxicology results, hospital records, x-rays, narrative reports, or other diagnostic testing materials as required." (Id.) Within forty-five days of receiving proof of claim, Sun Life must make a decision on the claim. There are provisions for extensions if Sun Life requests additional information from the claimant or needs more time to make its decision.

If Sun Life denies a claim, the claimant may request a review of the denial. Along with that written request, the "claimant may submit written comments, documents, records or other information relating to the claim" and may also request any "documents, records and other information relevant to" the claim. (R. at 69.) Sun Life reviews the claim and notifies the claimant of its decision within forty-five days. There are provisions for extensions and tolling if the claimant is asked to submit further documentation or if Sun Life needs more time to make its decision.

Billy Ray died on August 28, 2005. On August 30, 2005, Vane Brothers Company, Billy Ray's employer, submitted a Group Claim Form, notifying Sun Life of Billy's Ray's death. On August 31, 2005, Vane Brothers sent the beneficiaries a letter with instructions and forms they needed to complete and send to Sun Life. On September 2, 2005, Sun Life acknowledged receipt of the Group Claim Form and requested further information, including a certified copy of the death certificate and toxicology reports. On September 3, 2005, the beneficiaries completed the Death Benefit Claimant's Statement and submitted it to Sun Life.

On October 6, 2005, Sun Life notified Vane Brothers that it had received a certified copy of the death certificate but still needed, inter alia, the toxicology report. On January 4, 2006, the funeral home notified Sun Life that the beneficiaries were having trouble obtaining the toxicology report because the decedent's wife was the next of kin and, therefore, the only one to whom the report could be released. Sun Life called the beneficiaries that same day and explained that the toxicology report was necessary in order to review the claim for AD&D benefits. On January 26, 2006, Sun Life sent another letter to Vane Brothers explaining that the claim could not be evaluated until the toxicology report was received and that if they did not receive the report by March 13, 2006, the claim would be evaluated without it. Subsequently,

Sun Life contacted the coroner directly and requested the toxicology report. Sun Life received the toxicology report on February 23, 2006.

Sun Life denied the claim for AD&D benefits in a letter to the beneficiaries on June 29, 2006, and in a letter to the beneficiaries' attorney on July 18, 2006. Sun Life explained how it had reached the conclusion that Billy Ray was intoxicated at the time of his motorcycle crash and that it had not received any information to indicate that either his intoxication or his driving were involuntary. Sun Life stated that the claim was being denied because Billy Ray's death was not an accident within the meaning of the policy and because it fell within the intentionally self-inflicted injuries exclusion. Sun Life notified the beneficiaries of their right to have the decision reviewed and invited them to submit additional documents or records supporting their claim.

On September 14, 2006, the beneficiaries requested a review of Sun Life's decision. The beneficiaries did not submit any additional information for consideration, but they did make legal arguments. They asserted that the evidence of Billy Ray's blood alcohol content would be inadmissible at trial due to Virginia confidentiality laws[5] and that Sun Life would be unable to overcome the presumption

---

[5] *See* Va. Code Ann. § 32.1-238.4 (2008) (describing confidentiality of certain information collected and maintained by the Virginia Office of the Medical Examiner).

- 13 -

of accidental death. They did not offer any information to refute Sun Life's conclusion that Billy Ray was voluntarily intoxicated and voluntarily drove his motorcycle on the night of the crash.

On October 26, 2006, Sun Life again denied the beneficiaries' claim for AD&D benefits. In so doing, Sun Life stated "We have received no information that would lead us to believe that Billy Ray's intoxication and his decision to drive in that condition were anything other than voluntary on his part." (R. at 176.) Sun Life maintained that no presumption of accidental death was appropriate and that, even if it did apply, the evidence of Billy Ray's intoxication would overcome the presumption. Finally, Sun Life pointed out that the beneficiaries cited a Virginia statute in support of their claim that the toxicology report was inadmissible, but the toxicology report was obtained from a South Carolina coroner. Sun Life advised the beneficiaries of their right to bring a suit under ERISA.

By all appearances, Sun Life abided by the procedures set forth in the policy. The plaintiffs have not pointed to any evidence Sun Life failed to consider or any procedures Sun Life failed to follow. I find that Sun Life's decision to deny benefits was the product of a reasoned and fair decision-making process.

The plaintiffs, understandably, are distressed by the loss of their son. Billy Ray made a terrible decision for which his family continues to suffer. Under the

circumstances, however, I cannot find that Sun Life abused its discretion in denying their claim.

IV

For the reasons stated herein, the plaintiffs' Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. An appropriate final judgment will be entered.

DATED: July 24, 2008

/s/   JAMES P. JONES
Chief United States District Judge

- 15 -

Case 1:07-cv-00062-JPJ-PMS   Document 16   Filed 07/24/08   Page 15 of 15   Pageid#: 485